PEOPLES BANK & TRUST COMPANY *v.* MILLER.

1. BILLS AND NOTES—SECONDARY PARTIES—DISCHARGE—EXTENSION OF TIME.

Defendant was not discharged as secondary party on note secured by chattel mortgage by extension of time for payment allowed by plaintiff bank where no binding agreement for any extension was entered between plaintiff and parties primarily liable and plaintiff continually pressed for payment.

2. CHATTEL MORGTAGES — FORECLOSURE — DEFECT IN PROCEEDINGS — ESTOPPEL.

Defendant *is estopped to assert any rights* he might otherwise have had because of defect in foreclosure proceedings on chattel mortgage on automobile where the defect he claimed was the result of defendant's own request that the matter not be treated as a repossession and that the automobile not be sold until notice from him.

Appeal from Ottawa, Smith (Raymond L.), J. Submitted Division 3 January 9, 1968, at Grand Rapids. (Docket No. 2,389.) Decided September 24, 1968.

Complaint by Peoples Bank & Trust Company, a Michigan banking corporation, against Frank E. Miller for deficiency on foreclosure of a chattel mortgage. Judgment for plaintiff. Defendant appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur 2d, Bills and Notes §§ 942–947.
[2] 15 Am Jur 2d, Chattel Mortgages §§ 205, 208, 209.

*Sholten & Fant* (*R. Neal Stanton,* of counsel), for plaintiff.

*Stribley & Rude,* for defendant.

NEAL FITZGERALD, J.   Frank E. Miller, Jr., the defendant and appellant in this cause, was an automobile dealer in the city of Grand Haven, Michigan, an officer and sales manager of Miller Chevrolet, Inc.   The plaintiff and appellee Peoples Bank and Trust Company is also located in Grand Haven. The plaintiff and defendant did a considerable amount of business together, both personal and for Miller Chevrolet, Inc., over a period of three years.

On February 18, 1963, the defendant personally, and apart from his regular business, sold a 1959 Cadillac automobile to one Wayne Johnson and Imogean Johnson, his wife.   The transaction was financed by the plaintiff bank which paid off the defendant and took the chattel mortgage contract signed by the Johnsons, and guaranteed with recourse by Frank Miller, Jr.   Payments were made by the Johnsons and were current on August 18, 1964.   Then they fell three payments into default, and defendant was informed of this fact by letters from the plaintiff.   The bank played along with the Johnsons until February hoping they would catch up the delinquent payments.   They did not.   In early February 1965, the Cadillac car was repossessed and stored at Miller's place of business, while Miller attempted to refinance the Johnsons.   No notice of repossession or intention to sell after the expiration of 15 days, as was required by the Hittle act, CLS 1961, § 492.101 *et seq.* (Stat Ann 1957 Rev § 23.628 (1) *et seq.*) was sent to the Johnsons.

It was testified, and the trial court so found, that defendant Miller had requested the bank not to treat the matter as a repossession at that time.   The car

was eventually sold on May 25, 1965. The sale resulted in a deficiency of $914.19 plus costs and the bank made a demand upon Miller for reimbursement. Miller refused to pay, claiming the bank had handled the matter improperly. An action resulted, and judgment was rendered against the defendant Miller in favor of the bank in the sum of $958.65 and costs of $92.80. Defendant appeals.

The defendant rests his case on two grounds:

(1) That as guarantor of commercial paper the appellant Miller was released from liability when the holder bank extended the maker Johnsons' time of payment.

(2) That as guarantor he was released when the bank failed to follow the law of foreclosure and determination of deficiency after repossession, as required by the Hittle act, *supra*.

In support of his first ground the appellant relies on the case of *Westinghouse Electric & Manufacturing Co.* v. *Hupp,* (1920) 211 Mich 698, where an indorser of a note was released by an extension of time to the maker without obtaining the indorser's consent. The difference between this case and the case at bar is apparent. There was no *binding* agreement for any extension between the bank and the Johnsons in this case, whereas there was a lengthy agreement in writing to that effect in the *Westinghouse* case. The following quotation from the *Westinghouse* case serves to point out the difference:

"It has long been the general rule that an agreement by the creditor with the principal debtor which extends the time of payment of the debt without the consent of the surety, or indorser secondarily liable, discharges the latter. That there was between the corporation which made these notes and plaintiff, the payee and holder, a lengthy and elaborate agree-

ment in writing by which their time of payment was extended for approximately a year and a half, is undisputed." 211 Mich 698, 708, 709.

The *Westinghouse* case cited the following section of the prior statute (p 707):

"Sec. 6161. A person secondarily liable on the instrument is discharged:
"Third. By the discharge of a prior party. * * *
"Sixth. By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

The principle involved is well stated in 11 Am Jur 2d, Bills and Notes, § 946, pp 992, 993, 995:

"Only an agreement binding upon the holder can effect the discharge of a party secondarily liable on a negotiable instrument under the NIL or the law merchant. An agreement between the holder and principal debtor which will discharge the party secondarily liable must be a valid and binding agreement, and one which for the time presents a legal obstacle to the prosecution of an action upon the original instrument.
"If there is no agreement for an extension of time, but a mere indulgence of the debtor, the party is not discharged. * * *
"The extension must be made for sufficient consideration, must be for a definite and certain time, and must postpone the right to pay, as well as the right to demand or enforce payment."

Moreover, there was evidence that the bank continually pressed for payments when the Johnsons fell behind and collected double and even triple payments at times. The appellant was not discharged as claimed.

It appears that the defendant bank conducted the foreclosure against the Johnsons in accordance with the requirements of the Uniform Commercial Code (MCLA § 440.1101 *et seq.* [Stat Ann 1964 Rev § 19.1101 *et seq.*]) instead of under the provisions of the Hittle act, *supra.* The code had become effective on January 1, 1964. The plaintiff insists that this failure of the defendant to proceed in accordance with the provisions of the Hittle act released him from any liability to the defendant.

It is unnecessary to decide here the question as to whether or not the plaintiff had an option to proceed under either act with its foreclosure, or was limited to the Hittle act requirements as claimed by the plaintiff. The trial court disposed of this point in its opinion when it found as trier of the facts, with ample support in the record, that the reason the bank did not follow the mandates of the Hittle act in foreclosing was because the defendant requested that the matter not be treated as a repossession and the car not be put up for sale until further notice. The bank acceded to this request, but acted promptly when defendant suggested selling at a later date. The defendant cannot now seek to take advantage of the plaintiff because the latter acted in accordance with his wishes and request. He is estopped to assert whatever rights he might otherwise have had. It is apparent that the question as to which foreclosure proceeding should have been followed is now moot.

Affirmed. Costs to plaintiffs.

FITZGERALD, P. J., and R. B. BURNS, J., concurred.